UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| GARY LAVON ROBINSON, | ) C/A No. 4:15-3472-TLW-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Report and Recommendation |
| THOMAS RAGLAND; NIKON MORGAN; | ) |
| CHRISTOPHER DILLARD; FAITH | ) |
| CHAPPELL; AND JASON PALMER, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## PROCEDURAL BACKGROUND

The Plaintiff filed this action under 42 U.S.C. § 1983[1] on August 28, 2015,

alleging violations of his constitutional rights.  Plaintiff filed an amended complaint

on December 15, 2015. (Doc. #27). Plaintiff is currently incarcerated at Evans

Correctional Institution ("ECI").  At all times relevant to the allegations in the

complaint, Plaintiff was housed at the Perry Correctional Institution ("PCI").

Defendants filed a  motion for summary judgment along with a memorandum,

affidavit, and exhibits in support of said motion. (Doc.#59). Because Plaintiff is

proceeding pro se, he was advised on or about April 12, 2016, pursuant to Roseboro

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this
is a dispositive motion, the report and recommendation is entered for review by the District Judge.

v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants' motion for summary judgment could result in the dismissal of his complaint. After requesting and receiving an extension, Plaintiff filed a response on May 18, 2016. (Doc. #71).[2]

## STANDARD FOR SUMMARY JUDGMENT

As previously stated, the Defendant filed a motion to dismiss, or alternatively for summary judgment. As matters outside of the pleadings were submitted by the parties, the undersigned will treat this motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none

---

[2] Plaintiff filed three motions to compel discovery (docs. #30, #31 and #38) which were granted in part and denied in part by order filed June 15, 2016.

2

exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Baber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied

on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## DISCUSSION

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants have pleaded the affirmative defense of failure to comply with the PLRA's exhaustion requirement and have moved for summary judgment as to Defendants Ragland, Morgan, Chappell and Palmer on that basis arguing the court lacks jurisdiction.

In his amended complaint, Plaintiff asserts that "[t]he grievance that Plaintiff filed on Defendant Thomas Ragland, Nikon Morgan, Jason Palmer and Faith

4

Chappell, were not process or answer. Since these grievance were not process or answer, It is consider Plaintiff exhausted his remedy as required . . . [o]nly one grievance was answer. . ." (Doc. #27 at 3-4). In his response to summary judgment, Plaintiff asserts that all of his grievances pertain to the same action, and all should have been forwarded for investigation.

In support of their argument, Defendants submitted the affidavit of Michael Tindal who attests that he is the Inmate Grievance Administrator for the South Carolina Department of Corrections (SCDC), that he has access to SCDC's inmate grievance records, and that he attached true and accurate copies of Plaintiff's grievances to his affidavit. (Doc. # 59-5). Tindal attests that since July of 1999, Plaintiff has filed ninety-two grievances. (Id.). In October 2013, Plaintiff filed five grievances alleging the same or substantially similar incidents complained of in the amended complaint: 1859-13, 1860-13, 1861-13, 1892-13, and 1893-13. (Id.).

As to Defendant Morgan, Plaintiff filed Grievance 1859-13 on or about October 6, 2013, alleging that Defendant Morgan used excessive force. (Id.). The Inmate Grievance Coordinator (IGC) returned the grievance to Plaintiff on or about October 7, 2013, as unprocessed because Plaintiff failed to date the grievance and did not attach the requisite Request to Staff form. (Id.). Plaintiff was given time and instructions to refile his grievance to comply with the rules, but he never refiled this

grievance nor did he file a Step 2 for grievance 1859-13. (Id.). Instead, Plaintiff filed Grievance 1892-13 alleging Morgan used chemical munitions on October 3, 2013, which was dismissed as duplicative to the Grievance against Dillard, Grievance 1860-13. Tindel attests that Plaintiff did not exhaust his administrative remedies with regards to Officer Morgan. (Id.). Additionally, Tindell asserts that none of the grievances filed by Plaintiff in October 2013 referenced allegations against Defendants Palmer or Chappell, none referenced a conspiracy among correctional officers or retaliatory acts by correctional officers, and none asserted medical indifference. (Id.).

Plaintiff filed a Step 1 grievance against Defendant Dillard, Grievance 1860-13, which was sent to the DOI, reviewed, and denied. Plaintiff filed a Step 2 grievance which was also denied.

As to Defendant Ragland, Plaintiff filed Grievance 1861-13 on October 7, 2013 accusing Defendant Ragland of cutting off the water to his cell on October 4, 2013. (Id.). The IGC returned this grievance to Plaintiff on or around October 9, 2013, as unprocessed because Plaintiff did not request any action and did not attach the requisite Request to Staff form. (Id.). Plaintiff was given time and instructions to refile his grievance to comply with the rules but never refiled this grievance or filed a Step 2 form for this grievance. (Id.).  Instead, Plaintiff filed Grievance 1893-13 in

6

which he alleged a correction for the incident date for the conduct giving rise to the grievance, otherwise, the allegations were identical to the allegations contained in grievance 1861-13. (Id.). The IGC returned this grievance as unprocessed because Plaintiff did not attach the required Request to Staff form and failed to follow the IGC's instructions included in the response to Grievance 1861-13. (Id.). In order for Plaintiff to comply with the SCDC grievance system, he needed to file his grievance form or attempt to re-file his Grievance 1861-13 but failed to do so and, thus, failed to exhaust his administrative proceedings with regards to the allegations that Defendant Ragland turned off the water to his cell for three days contained in Grievance 1893-13. (Id.).

In Plaintiff's response to summary judgment, he asserts that he attempted to file grievances against Defendant Ragland, but they were returned unprocessed for lack of attaching a Request to Staff form. (Doc. #71; Grievance 1861-13 and 1893-13). Plaintiff contends that the grievance should have been forwarded to the Department of Investigation (DOI) for review like the grievance filed against Officer Dillard as they all pertained to the same incident. (Id.).

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted."

As to Defendants Palmer and Chappell, it is recommended that this action be dismissed for failure to exhaust. Chappell and Palmer were not named in any of the grievances and the incident that was exhausted did not involve any conduct ascribed to these two defendants. Therefore, it is recommended that defendants Chappell and Palmer be dismissed from this action.[3]

As to the alleged excessive force claim against Defendants Dillard, Morgan, and Ragland, Plaintiff has established a genuine dispute as to Defendants' affirmative defense that he has not exhausted his administrative defense. Plaintiff filed a Step 1 and Step 2 for Grievance 1860-13 referencing officer "Dillinger" and/or "Dillard" for excessive force through chemical munitions which were both denied. (Id.). Although Grievance 1860-13 only named Officer Dillard, Petitioner stated in the grievance that the department should review the incident report to see who gassed him and "they gassed me for no reason. 2 officers[4] gassed me with handcuff on." (Doc. #59-5 at 7). Therefore, the grievance provided administrators with a fair opportunity under the

---

[3] Defendants have asserted that Palmer and Chappell were not served with the summons and complaint and should be dismissed pursuant to Rule 4m, FRCP. The summonses were returned unexecuted as to Defendants Chappell and Palmer. (Docs. # 62 and #64).

[4] In his response, Plaintiff asserts that the reason he did not name Ragland as one of the officers that sprayed him was due to the fact that once the Defendants began spraying the chemical munitions, he could not see.

circumstances to address the problem that would later form the basis of the suit as the administrators had the reports of force identifying which officers were involved. (See Doc. # 71-1 at 8-10).

Additionally, Tindell attests that Plaintiff's Grievance 1892-13 as to Defendant Morgan using excessive force by way of chemical munitions was unprocessed because it was considered a "duplicate" to the grievance he filed against Dillard, Grievance 1860-13, noting "inmates will only be allowed to submit one grievance per incident or circumstance." (Id.). Therefore, the Defendants recognized that the allegations in Grievance 1860-13 included allegations against Defendant Morgan by considering it to be duplicative as the same event.

The Supreme Court and the Fourth Circuit Court of Appeals addressed "the issue of whether prison grievances must name particular defendants in order to satisfy the PLRA's exhaustion requirements as against those defendants." Moore v. Bennette, 517 F.3d 717, 726 (4th Cir.2008). In Jones v. Bock, the Supreme Court found that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." 549 U.S. 199, 219, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007). Rather, as the Court held, the PLRA requires only "[c]ompliance with prison grievance procedures" to exhaust administrative remedies. Id. In light of Jones, the Fourth Circuit Court of Appeals held in Moore v. Bennette, supra, that the plaintiff

9

did not have to identify specific individuals in his grievances where such identification was not required by the prison's grievance procedures. 517 F.3d at 717. Defendants have not presented any evidence that the SCDC's policies and procedures required Plaintiff to identify specific individuals. Therefore, an issue of fact exists regarding exhaustion of remedies in relation to the allegations of excessive force against Defendants Dillard, Morgan, and Ragland.

In sum, it is recommended that the allegations against Defendants Chappell and Palmer be dismissed for failure to exhaust administrative remedies, the allegations against Defendant Ragland for turning off the water in his cell be dismissed for failure to exhaust, and any allegations of medical indifference be dismissed for failure to exhaust. The allegations of excessive force for administering chemical munitions on October 3, 2013, against Defendants Morgan, Dillard, and Ragland will be addressed on the merits below.

## ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

### Excessive force

Plaintiff alleges that Defendants Dillard, Morgan, and Ragland violated his constitutional rights as a result of an incident on October 4[5], 2013, when they sprayed him with chemical munitions while handcuffed and that Defendant Dillard called him

---

[5] The reports represent that the use of force incident occurred on October 3, 2013.

an offensive name. Plaintiff asserts that all three officers took turns spraying him (doc. #71 at 14) and that it is "impossible for (3) officer spray plaintiff, without spraying officer gardners, because He's direct behind me and taller than me and three officer cannot fit inside or spray one person at the same time." (Doc. #71 at 10). Plaintiff argues that the retrieval chain is a "short lease and you cannot turn around in aggression manner." (Doc. #71 at 17). In his compliant, Plaintiff asserts that he was not allowed to shower or wash off the gas because the water to his cell was turned off. Plaintiff argues that he was stripped and left naked in his cell with gas all over him and was not allowed to decontaminate as Defendants allege. As a result of the gassing, Plaintiff alleges that he suffered for hours with burning pain in his eyes and ears (doc. #71 at 16), he suffered a loss of hearing due to the gas in his ears for over three days, suffered with burning, and his blood pressure and heart rate increased. Plaintiff submits that the officers did not follow policy of having a supervisor present and a video recording of the gassing incident while acting with a culpable state of mind.[6] Additionally, Plaintiff alleges that the gassing was a form of retaliation.[7]

---

[6] As Plaintiff attempts to assert a claim under § 1983 for an alleged failure by Defendants to follow SCDC policies or rules, the claim fails. "The failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation." Johnson v. S.C. Dep't of Corrections, No. 06–2062, 2007 WL 904826, at *12 (D.S.C. Mar.21, 2007) (citing United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1978)).

[7] Plaintiff's claims of retaliation fail. To state a claim of retaliation under § 1983, a plaintiff must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally

Plaintiff submitted the declaration on inmate James Feagin who declared that he was housed at PCI on October 3, 2013, and saw Ragland, Dillard, and Morgan shaking gas cans at Plaintiff's cell. Feagin states that he saw Plaintiff "come to his cell door with one hand on his head to be handcuffed. Gary Robinson was then handcuffed and shackled. I then saw ofc. Dillard spray Gary Robinson, then ofc. Morgan did the same, I didn't see Gary Robinson disobey an order that was given to him." (Doc. # 1-1 at 7-8).

Defendants argue that the claims of excessive force through the use of chemical munitions should be dismissed. Defendants contend that Plaintiff had an extensive history of disciplinary infractions, and he was found guilty at a disciplinary hearing on October 17, 2013, (see doc. #59-3 at 15) after threatening Officer Ragland and Ragland's family on October 3, 2013, which was his seventh infraction in 2013.

In support of their motion, Defendants submitted the affidavit of Sgt. Thomas Ragland who attests that on October 3, 2013, Plaintiff was being non-compliant when he was directed to stop cursing at the staff as they were delivering lunch to the inmates. (Doc. #59-3). Ragland warned Plaintiff that if he continued to cause a

---

protected right or that the act itself violated such a right." Adams, 40 F.3d 72 at 75. An inmate must also present more than conclusory accusations of retaliation, Id. at 74, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. See, e.g., Cochran 73 F.3d at 1318; Hughes v. Bledsoe, 48 F.3d 1376, 1387 n. 11 (4th Cir.1995).

disturbance, he could be placed on an alternative meal for his disruptive behavior. (Id.). After lunch, Plaintiff refused directives to return his tray. (Id.). When he finally obeyed the directives and returned the tray, he threatened Officer Ragland and the officer's family. (Id.). Therefore, Plaintiff was to be removed from his cell and "placed in a control cell" for his threat for which he was charged with a disciplinary violation. (Id.). In order to place Plaintiff in a control cell, Officer Ragland needed to restrain Plaintiff. (Id.). However, Plaintiff refused directives to approach the door in order to be restrained. (Id.). Therefore, Sgt. Palmer was contacted to assist. (Id.). Defendant Palmer approached Plaintiff's cell and directed him to come to the door to be handcuffed. Plaintiff "complied." (Id.).

Officers Gardner, Dillard, and Morgan also responded to assist since Plaintiff was in a special management unit (SMU). (Id.). Officer Gardner started applying the handcuffs to Plaintiff while Ragland held the retrieval chain. (Id.). After the retrieval chain and handcuffs were applied, Plaintiff disobeyed directives by stepping away from his cell door and turned to staff which caused Officer Gardner's arm to be pulled through the cuffing port and into the cell. (Id.). With Officer Gardner in a vulnerable position and Plaintiff continuing to disobey directives, Ragland attests that he and the other officer's feared for Officer Gardner's physical safety. (Id. citing to Exhibits A-E, Reports of Use of Force). Therefore, Defendants Dillard, Morgan, and Ragland

13

"simultaneously" administered chemical munitions towards Plaintiff to protect their fellow officer and gain compliance. (Id.).  Seconds after the chemical munitions, Defendants regained control of Plaintiff, his cell was stripped, and he was placed in a control cell with medical being notified of the use of chemical munitions. (Id.). Officers Ragland, Morgan, Dillard and Gardner submitted their completed Incident Reports. (Id.). Out of fear for  Officer Gardner's safety, Ragland asserts that the officers dispersed a burst of chemical munitions to the facial area of Plaintiff who then complied with all further directives. (Id. citing to Exhibits C, D, E). Medical was contacted and came to Plaintiff's cell where he was observed and found to be in no acute distress, was up, awake, alert, oriented, breathing with ease and no acute distress.  (Id. and citing to medical records, exhibit #59-4 at 13-14). Plaintiff was also taken to medical that day for a follow-up evaluation. (Id.). Plaintiff was seen by medical on several occasions and was found to be in no distress. (Id.). In the grievance that was exhausted,  Plaintiff did not make allegations that he was denied medical treatment.

     In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321 (1986).  The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or

restore discipline. (Id.) (internal quotation marks omitted). The objective component is not as demanding because "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evidence." Wilkins v. Gaddy, supra, (internal quotation marks omitted). In Whitley, supra, the Supreme Court identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley, 475 U.S. at 321 (1986). Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 130 S.Ct. 1175, 1178. See also Hudson v. McMillan, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Federal courts closely scrutinize the use of tear gas or mace in correctional facilities. See, e.g., Bailey v. Turner, 736 F.2d 963, 969-70 (4th Cir.1984)(prison officials may use mace to compel the obedience of a recalcitrant prisoner). The Fourth Circuit has stated that "[a] limited application of mace may be much more humane

and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996)(internal quotations marks and citation omitted). Accordingly, although it is not *per se* unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment." Bailey, 736 F.2d at 969.

Here, there  is no dispute that Defendants Dillard, Morgan, and Ragland sprayed chemical munitions on Plaintiff in his cell after he was handcuffed. However, the parties offered different versions of the salient facts surrounding the use-of-force incident alleged in the pleadings. Plaintiff contends chemical munitions were not needed because he complied with directives to be handcuffed, that the amount of chemical munitions was excessive, and that Defendants continued to take turns spraying him after he was restrained. Therefore, there is an issue of fact as to whether or not the Defendants had reason to fear for Officer Gardner's safety when his arm

16

had been pulled into Plaintiff's cell,[8] whether or not the officers sprayed him simultaneously or at different times, whether or not Plaintiff turned toward the officers in an aggressive manner, and whether or not Plaintiff had been subdued or had become compliant at the time he was sprayed. Plaintiff claims that the use of chemical munitions was excessive and done with a culpable state of mind. Based on the reports of use of force that were submitted by Defendants, Officer Ragland disbursed 22.7 grams and Officer Morgan disbursed 26.9 grams in addition to the 8.7 grams Officer Dillard's disbursed.[9] Additionally, the Use of Force Report to Administration contains the Warden's comments that "Staff has been corrected on the number of staff using gas on one inmate." (Doc. #71-1 at 8). Thus, viewing the record in the light most favorable to Plaintiff, there is a genuine issue of fact as to the need for and amount of force used.

---

[8] In Officer Gardner's Report on the Use of Force, he states that "[a]s I was placing the handcuffs on I/M Robinson, The I/M pulled away and turn in a threatening manner. Which pulled my arms into his cell thru the food flap. Chemical and physical force was used. I officer Gardner pull on the Retrival Chain to Gain control of I/m to place him on control cell." (Doc. #59-3 at 13).

[9] As noted, the officers assert that they disbursed simultaneously while Plaintiff alleges they sprayed him one after the other. Based on the reports, 58.3 grams of chemical munitions was sprayed. Cf. Townsend v. Anthony, No. 03-2528, 2006 WL 2076920, at * 9 (D.S.C. July 24, 2006) [Finding a twenty gram discharge was acceptable]; Plummer v. Goodwin, No. 07-2741, 2010 WL 419927 at * 7, n. 4 (D.S.C. Jan. 29, 2010) [Finding that a discharge of 33.5 grams was a relatively small amount]; see also, Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984) [In determining whether the amount of force used was reasonable, courts should evaluate the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used (to) determine the validity of the use...."].

As there is an issue of fact regarding whether the Defendants used excessive force such that it is recommended that summary judgment be denied.[10]

## Cruel and Unusual Punishment : Decontamination of Chemical Munitions

Plaintiff alleges cruel and unusual punishment in not being allowed to decontaminate after he was sprayed with chemical munitions.[11] Defendants assert this issue has not been exhausted.

Here, Defendants admitted that the water to Plaintiff's cell was turned off but asserts it was turned off for approximately two hours not three days. (See Ragland's affidavit, doc. #59-3 at 2). Ragland attests in his affidavit that Plaintiff was allowed to decontaminate in his cell after the incident. Further, a review of the medical records reveal that Plaintiff was seen within a couple of hours of the incident in his cell where he complained of a headache and being dizzy but did not make any complaint that he had not been allowed to decontaminate. Based on the incident

---

[10]  Defendants cannot claim qualified immunity because malicious and sadistic use of force for the very purpose of causing pain is always in violation of clearly established law.

[11]  An inmate may maintain an Eighth Amendment claim of excessive force where he is subjected to chemical munitions and not allowed to wash or decontaminate himself. Mann v. Failey, 578 Fed. App'x 267, at * 5–6 (4th Cir.2014); see also Williams v. Benjamin, 77 F.3d 756, 768 (4th Cir.1996). In Mann, the Fourth Circuit held that summary judgment was precluded when the record demonstrated that a prisoner who has been maced was in pain for several hours and officers refused to allow him to decontaminate. See Mann, 578 F. App'x at 269–71. See also Williams v. Benjamin, 77 F.3d 756, 761, 764–68 (4th Cir.1996) (holding, in the excessive force context, that an inmate's sworn testimony concerning correctional officers' refusal to allow him to wash or receive medical attention after being "maced" precluded summary judgment).

reports, the gassing incident occurred at approximately 11:50 a.m. Medical encounter 688 notes that Plaintiff called out to someone from mental health at 14:37 that he had been gassed and was not "feeling well, dizzy, head hurting, and felt his blood pressure was up." (Doc. #59-4 at 13-14). She noted that she notified medical. Encounter 689 notes that Plaintiff was seen at his cell door at the request of security at 15:18 noting he had chemical munitions earlier, and the nurse observed Plaintiff "up in his cell, pacing, asking to be seen by medical staff. I/m up and about, awake, alert, oriented, breathing with ease. Appears to be in no acute distress." Id. At 15:27, encounter 690 notes that "inmate seen by mental health and verbalized c/o of dizziness and heart racing. Inmate pulled to medical exam room for evaluation. Inmate with steady gait while ambalating to exam room. No s/sx of distress. Resp even and unlabored. No diaphoresis. S1s2 with regular rate and rhythm. Lungs clear throughout with O2 sat 98% on RA. Inmate reports feelings of 'heart Racing' x 3weeks but reports increase in problem since gassed early today." Id. (quoted verbatim). There was no mention of Plaintiff complaining of burning or not being able to decontaminate in the medical records on October 3, 2013.[12]

_____

[12] It was not until October 22, 2013, that the medical notes indicate Plaintiff complained of having gas in his left ear  which was burning and complained that he could not hear as well. (Encounter 699, Doc. #59-4 at 12). The medical notes indicate Plaintiff continued to complain of pain in his ear with a loss of hearing. (See encounters 701, 703).

4:15-cv-03472-TLW-TER     Date Filed 12/16/16     Entry Number 87     Page 20 of 21

Additionally, the incident reports stated that Plaintiff was allowed to decontaminate, and Plaintiff did not allege in his grievance Step 1 or 2 (grievance #1860-30) referencing the gassing incident that he was not allowed to decontaminate. Therefore, nothing in the exhausted grievance or the medical records or reports associated with this incident would put Defendants on fair notice of this claim regarding cruel and unusual punishment for failure to allow Plaintiff to decontaminate so that it could be considered exhausted.[13]

In the alternative, to the extent that this issue of whether or not Plaintiff was allowed to decontaminate should be considered in conjunction with Grievance #1860-13 referencing the gassing incident which was exhausted and the court determines there was fair notice of this claim, an issue of fact exists[14] and summary judgment should be denied.

## CONCLUSION

Based on the above reasoning, it is recommended that claims of excessive force

---

[13] As set forth above, Plaintiff filed a grievance against Defendant Ragland for turning the water off in his cell after being gassed (Grievance 1861-13). However, this grievance was returned unprocessed, and Plaintiff did not refile the grievance. Therefore, Grievance 1861-13 was not exhausted.

[14] In Mann v. Failey, supra, the Fourth Circuit observed that "a lack of injury is not dispositive, so long as there is sufficient evidence of maliciously-applied force. Here, Plaintiff asserts that the water was turned off for three days after he was gassed, and he was not allowed to decontaminate. Viewing the evidence in a light most favorable to Plaintiff, Plaintiff was sprayed with chemical munitions, and there is, at the very least, contradictory evidence regarding whether the Plaintiff was allowed to rinse off the chemical munitions in his cell before the water was turned off or at what point the water was turned back on.

20

be denied as to Defendants Ragland, Dillard and Morgan and the remaining claims against Defendants Ragland, Morgan, Chappell, Dillard, and Palmer be dismissed for failure to exhaust administrative remedies.  If the court concludes that claims of cruel and unusual punishment for failure to allow decontamination are exhausted, it is recommended that these claims against Defendants Dillard, Ragland, and Morgan be denied. Therefore, it is

RECOMMENDED that the motion filed by the Defendants (document #59) for summary judgment be GRANTED IN PART AND DENIED IN PART as set forth above.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

December 16, 2016
Florence, South Carolina

The parties' attention is directed to the important notice on the next page.